**In re Miguel SAMONTE, Jr., M.D., Ostensible Agent of Las Palmas Medical Center, Relator.**

No. 08–04–00253–CV.

Court of Appeals of Texas, El Paso.

April 7, 2005.

Karen L. Landinger, Ray, Valdez, McChristian & Jeans, P.C., El Paso, for Relator.

Gonzalo Garcia, El Paso, pro se.

Abelardo P. Bernal, Oaxaca, Bernal & Assoc., El Paso, for Interested Part.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

In this mandamus proceeding, Miguel Samonte, Jr., M.D. complains of the trial court's denial of his motion to dismiss a medical malpractice suit. The motion challenged the sufficiency of the unsigned and undated expert report filed by the plaintiff below. The report also failed to meet the minimum statutory requirements and did not reflect that the report was prepared by an expert capable of rendering an expert opinion regarding the applicable standard of care, failed to include the qualifications, training, experience, current or past employment or specialty of the testifying expert, is unsigned and undated. Relator raises the question of whether such a report, as tendered to the defendant, demonstrates a good faith effort on the part of plaintiff to comply with TEX. REV.CIV. STAT. ANN. art 4590i, now TEX. CIV. PRAC. & REM CODE ANN. § 74.001 et seq. Finding that the reports were filed in good faith, the trial court denied the motion to dismiss. We conditionally grant relief.

## I. FACTUAL SUMMARY

The underlying cause of action arises from a medical malpractice case involving

the care and treatment of Ricardo Rangel. Rangel had elected to undergo carpel tunnel surgery to be conducted by Dr. Andrew Joseph Palafox at the Las Palmas Medical Center on November 1, 2002. Defendant Miguel Samonte, Jr., M.D. was the anesthesiologist managing the anesthesia of Ricardo Rangel. Subsequent to the surgery, Ricardo Rangel suffered a cardiac arrest. All efforts to resuscitate him were not successful and he was pronounced dead approximately one and a half hours after the surgery.

The decedent's mother, Julia Rangel, filed her Original Petition against Samonte and the other treating physician present during Ricardo Rangel's surgery and the hospital, asserting various claims of medical negligence.[1]

The plaintiff timely filed an expert's report as required by the Medical Liability and Insurance Improvement Act (the Act).[2] The report is purportedly prepared by Dr. George Mychaskiw II, D.O. and is included in the appellate record. Relator has urged that the report as prepared and produced is deficient for a variety of reasons including substantive defects as to the form and content of the report. He contends that it does not comport with the requirements of the Texas Medical Liability and Insurance Improvement Act and, therefore, the cause against him should be dismissed.

Samonte moved to dismiss the Plaintiff's claims against him and the court conducted a hearing to address the adequacy of the report. Samonte argued that the report was deficient because it did not state that Mychaskiw had knowledge of or was qualified to discuss the accepted standards of care, did not state that the expert was board certified, whether he was practicing medicine at the time, or whether he was qualified on the basis of training or experience to offer a report, and was not signed. He also argued that the purported expert's *curriculum vitae* was not included with the report. Plaintiff's counsel argued that the tendered report should be considered a good faith effort to comply with the requirements of the act.

After a hearing on the issue, the trial court denied Samonte's motion. Relator has filed an Original Petition for Writ of Mandamus seeking relief from this Court and raising five issues on appeal. Issues One, Two, and Four attack the trial court's failure to dismiss the cause on the grounds that the expert's report fails to comply with the requirements of the Act, Issue Three asserts that the plaintiff's report as produced does not equate to a good faith attempt to comply with the Act, and finally, that the defendant does not have an adequate remedy at law and is therefore entitled to mandamus relief. For the reasons stated below, we agree with Relator and conditionally grant relief as noted.

## II. *THE STATUTE*

■ The Medical Liability and Insurance Improvement Act (the Act) was en-

1. The plaintiff apparently nonsuited the other defendants prior to the hearing on this matter.

2. Act effective August 29, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (as amended) (former Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 1.01–16.02 (the "Medical Liability and Insurance Improvement Act")), repealed by Act effective September 1, 2003, 78th Leg.,

R.S., ch. 204, § 10.09, 2003 Tex Gen. Laws 847, 884. Many of the provisions of former article 4590i are now codified at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–74.507 (Vernon Supp.2004–05). Because this case was filed before September 1, 2003, the provisions of former article 4590i apply. Subsequent references to the repealed act will be cited as "former Tex.Rev.Civ. Stat. Ann. art. 4590i."

acted by the Texas Legislature to curtail frivolous claims. *Hart v. Wright*, 16 S.W.3d 872, 876 (Tex.App.-Fort Worth 2000, pet. denied); *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 537 (Tex.App.-Texarkana 1998, no pet.). In order to encourage the screening of medical malpractice claims by an expert prior to filing, the Act requires a plaintiff to provide each defending physician or health care provider with one or more expert reports relating to liability and causation. *Wood v. Tice*, 988 S.W.2d 829, 830 (Tex.App.-San Antonio 1999, pet. denied); *see* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(d). The expert report, along with *a curriculum vitae* of each expert, must be furnished to the defendant not later than the 180th day after the date on which a health care liability claim is filed or the last day of any extended period as permitted under the statute. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). If a plaintiff fails to comply with this provision and the defendant files a motion seeking sanctions pursuant to Section 13.01(e), a trial court has no discretion and must enter an order dismissing the case with prejudice. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e)(3); *Hart*, 16 S.W.3d at 876. Where an expert report is tendered, the defendant may challenge the adequacy of the report. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*); *Hart*, 16 S.W.3d at 876. The trial court is authorized to grant a motion to dismiss "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*). An expert report is defined as a fair summary of the expert's opinions regarding: (1) applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 13.01(r)(6).

### III. *STANDARD OF REVIEW.*

 We apply an abuse of discretion standard when reviewing a trial court's ruling on a dismissal under ·Section 13.01(e)(3). *American Transitional Care Ctrs. of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Hart,* 16 S.W.3d at 875; *Tibbetts v. Gagliardi,* 2 S.W.3d 659, 663 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) (orig.proceeding). A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or reference to guiding principles of law. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). An appellate court rarely interferes with the trial court's exercise of discretion and we may not substitute our judgment for that of the trial court. *Walker,* 827 S.W.2d at 839–40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if we would have decided the issue differently, we cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A trial court has no discretion in determining what the law is or applying the law to the facts. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id.*

 An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Id.*

Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies. *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989).

## IV. INADEQUACY OF THE EXPERT'S REPORT

■ The sole question for the trial court was whether the report tendered represented a good faith effort to comply with the statutory definition of an expert report. *Palacios,* 46 S.W.3d at 875. Because the Act focuses on the contents of the report, the only information relevant to the inquiry is contained within the four corners of the document. *Id.* at 878. The trial court should look no further than the report itself in determining whether it constitutes a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care provided failed to meet that standard, and the causal relationship between that failure and the claimed injury. *Id.* Further, the report itself must establish the expert's qualifications on the basis of training and experience. *See In re Windisch,* 138 S.W.3d 507, 511 (Tex.App.-Amarillo 2004, orig. proceeding).

■ A trial court may grant a motion challenging the adequacy of an expert report only if it appears, after hearing, that the report does not constitute a good faith effort to comply with the definition of an expert report. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l*). An "expert report" is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care pro-

vider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6). While the report does not have to present all the plaintiff's proof, it must include the expert's opinion on each of the elements identified in the statute. *Palacios,* 46 S.W.3d at 878. The report must inform the defendant of the specific conduct being questioned and provide a basis for the trial court to conclude the claims have merit. *Id.* at 879. A report that merely states conclusions about the standard of care, breach, and causation is not sufficient. *Id.* Nevertheless, the report does not have to meet the same requirements as the evidence offered in support of a summary judgment proceeding or at trial. *Id.*

One basis upon which Samonte attacked the report provided by plaintiff is that it failed to include any information describing Dr. Mychaskiw's qualifications to render an opinion on the matters in controversy, specifically the standard of care and possible breach. A person may qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care only if the person is a physician who (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose, (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim, and (3) is qualified on the basis of training or experience to offer an expert opinion regarding the accepted standards of medical care. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 14.01(a). In determining whether the expert is qualified on the basis of training or experience, the court is to consider whether, at the time the claim arose or the testimony is given, the witness is board certified or has other substantial training

or experience in an area of practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 14.01(c); *Hagedorn v. Tisdale,* 73 S.W.3d 341, 349 (Tex.App.-Amarillo 2002, no pet.).

Every licensed doctor is not automatically qualified to testify as an expert on every medical question. *Hagedorn,* 73 S.W.3d at 350; *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996). On the other hand, the fact that an expert is not a specialist in the particular branch of the profession for which the testimony is offered will not automatically disqualify him as an expert. *Hagedorn,* 73 S.W.3d at 350; *Blan v. Ali,* 7 S.W.3d 741, 745 (Tex. App.-Houston [14th Dist.] 1999, no pet.). The issue is the specific subject matter and the expert's familiarity with it. *Hagedorn,* 73 S.W.3d at 350; *see Broders,* 924 S.W.2d at 153; *Blan,* 7 S.W.3d at 745. As already noted, there are specific criteria to be met under the Medical Liability and Insurance Improvement Act for an expert to testify as to whether a physician departed from accepted standards of medical care. *Hagedorn,* 73 S.W.3d at 350.

An expert report, as defined in Section 13.01(r)(6), must be the written report of an expert. By definition also, a person giving opinion testimony regarding a physician's breach of accepted standards of medical care is an expert only if qualified to testify under the requirements of Section 14.01(a). TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(5)(A). A Section 13.01 report concerning standards of care for physicians authored by a person who is not qualified to testify under Section 14.01(a) thus cannot constitute an adequate report. That the person is so qualified must appear from the report, with its accompanying *curriculum vitae. In re Windisch,* 138 S.W.3d at 511; *Chisholm v. Maron,* 63 S.W.3d 903, 907 (Tex.App.-

Amarillo 2001, no pet.). It follows that a challenge to the adequacy of a report under Section 13.01(*l*) may be based on a claim that it fails to demonstrate the person rendering the opinion is qualified to testify, as well as on other claims of its inadequacy. *In re Windisch,* 138 S.W.3d at 511.

The parties appeared at a hearing on February 27, 2004. No witnesses were called and the trial court reviewed the motion and response of the parties. The trial court found only that the plaintiff had made a good faith effort to comply with the statutory requirements of the Act because, the document, "provides for a first summary of the report." The trial court also held that based upon the affidavit of a former employee of plaintiff's attorneys, the plaintiff had provided a copy of the *curriculum vitae* to defendant. We note that the *curriculum vitae* does not appear anywhere in the appellate record. The affidavit referred to by the trial court is included and the affidavit references a report the affiant produced to defendant's attorney. Attached to the affidavit, is a copy of the three-page document purportedly prepared by George Mychaskiw II, D.O. as the purported expert's report but it does not include a copy of the missing *curriculum vitae.* Though the trial court specifically held that the plaintiff had provided a copy of the *curriculum vitae* to defendant's counsel, we have not seen such a document. We agree that a copy of the *curriculum vitae* of the expert must be provided as an attachment to the report and note that the document should appear in the appellate record but does not. TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1). As noted, the determination of Mychaskiw's qualifications to provide an expert report must be made on the basis of the contents of the report and *curriculum vitae. In re Windisch,* 138 S.W.3d at 511;

*Chisholm,* 63 S.W.3d at 907; *see Palacios,* 46 S.W.3d at 878. A court reviewing the adequacy of a Section 13.01 report should look no further than the report itself because all information relevant to the inquiry is contained within its four corners. *In re Windisch,* 138 S.W.3d at 511; ·*Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002); *Palacios,* 46 S.W.3d at 878. Accordingly, we must make our determination from a review of the actual document provided to us as Mychaskiw's report noting the missing *curriculum vitae.*

As discussed previously, in a suit against a physician, the expert report required by Section 13.01 is a written report by an expert qualified to testify under the requirements of Section 14.01(a), which mandates the witness: (1) be practicing medicine at the time of his testimony or at the time the claim arose; (2) have knowledge of the accepted standards of care for the diagnosis, care, or treatment of the condition involved; and (3) be qualified on the basis of training or experience to offer an expert opinion on those accepted standards of care. TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(a). Section 14.01(c) provides a court with factors it is to consider in determining whether a witness's training or experience qualifies the witness as an expert under the Act. The factors are whether, at the time the claim arose or when testimony is given, the witness (1) is board certified or has ˙other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine rendering medical care services relevant to the claim. *Id.* Courts have referred to the standards discussed in *Broders v. Heise,* 924 S.W.2d 148 (Tex. 1996) in applying the criteria specified in Sections 14.01(a) and(c). *In re Windisch,* 138 S.W.3d at 511; *see Forrest v. Danielson,* 77 S.W.3d 842 (Tex.App.-Tyler 2002, no pet.); *Hagedorn,* 73 S.W.3d at 341; *Tomasi v. Liao,* 63 S.W.3d 62 (Tex.App.-

San Antonio 2001, no pet.). *Broders* teaches that one offering expert medical testimony must establish that the expert has expertise regarding "the specific issue before the ·court which would qualify the expert to give an opinion on that particular subject." *In re Windisch,* 138 S.W.3d at 512; *Broders,* 924 S.W.2d at 153. The analysis focuses on "the very matter" on which the expert is to give an opinion. *In re Windisch,* 138 S.W.3d at 512.

In *Tomasi,* the court affirmed the dismissal of a claim after finding the plaintiff's expert, a psychiatrist, could not give an expert opinion on the standards of care for post-operative care after neurosurgery, despite his status as a diplomat of the American Board of Psychiatry and Neurology. The court noted it was possible for experience similar to that ·described in the expert's *curriculum vitae* to˙ qualify a witness to testify about the specific matters at issue, but citing *Broders,* found the witness had not provided sufficiently detailed information to justify the conclusion he was qualified to do so. *See In re Windisch,* 138 S.W.3d at 512; *Tomasi,* 63 S.W.3d at 66.

Similarly, in *Forrest,* an orthopedic surgeon submitted a Section 13.01 report in a suit against a neurosurgeon and two vascular surgeons regarding surgery to remove a lumbar disc protrusion, fuse vertebra, and install a pedicle screw and rod system. The court noted that orthopedic surgery deals with correction of disorders of the skeletal system, that the spine is a part of that system, and that an orthopedic specialist should be familiar with procedures to correct problems of the spine. Concluding that the expert's specialization in orthopedics might thus be relevant to the claim involved in the case, the court nonetheless found there was nothing in the report and *curriculum vitae* to indicate his familiarity with the procedures used by the

defendant physicians, and the plaintiff had failed to establish his qualifications to give an expert opinion with respect to those procedures. *In re Windisch,* 138 S.W.3d at 511; *Forrest,* 77 S.W.3d at 848.

In reviewing the qualifications of one rendering a Section 13.01 report, the "issue is the specific subject matter and the expert's familiarity with it." *In re Windisch,* 138 S.W.3d at 513; *Hagedorn,* 73 S.W.3d at 350, *citing Broders,* 924 S.W.2d at 153. The requirement that a Section 13.01 report and *curriculum vitae* set forth the expert's knowledge of the procedure being questioned applies even when the defendant physician and the expert share certification in the same specialty. *In re Windisch,* 138 S.W.3d at 511; *see Richburg v. Wolf,* 48 S.W.3d 375, 378 (Tex. App.-Eastland 2001, pet. denied).

*Broders* recognized also that when the subject under inquiry is substantially developed in more than one field, testimony can come from a qualified expert in any one of them. *In re Windisch,* 138 S.W.3d at 513; *Broders,* 924 S.W.2d at 154. Likewise, courts have recognized that some standards of care are applicable to multiple schools of practice, and some subjects of inquiry will be common to all fields of practice. *In re Windisch,* 138 S.W.3d at 513; *see Blan v. Ali,* 7 S.W.3d 741 (Tex. App.-Houston [14th Dist.] 1999, no pet.). *In Silvas v. Ghiatas,* 954 S.W.2d 50, 54 (Tex.App.-San Antonio 1997, writ denied), a divided panel found an orthopedic surgeon qualified to testify against a radiologist as to the issues there involved, stating that the specialties are intertwined and it is common knowledge that orthopedic surgeons and radiologists work closely together.

■ The report provided by George Mychaskiw II, D.O. does not contain any information within the document that describes his qualifications, informs the reader that he has ever worked in the field of anesthesiology, or is currently working in the field. The report does not appear on letterhead, is not dated, nor is it signed. The report does not discuss his training or experience, nor does it establish how he is qualified to render an opinion on the standard of care and the alleged breach of that standard. The only reference to identify the purported author of the report is contained in four lines that appear at the end of the report. The lines only include the following information: George Mychaskiw II. DO [sic], Professor and Clinical Director, Department of Anesthesiology, University of Mississippi School of Medicine. The bare minimum of information provided in no way complies with the level of disclosure contemplated by the Act. We believe that the legislature was clear in its directive, the report itself must contain sufficient information to establish that the ostensible expert is qualified to render an opinion on the acceptable standards of care at issue. The report provided by Mychaskiw does not meet that standard.

From the four corners of the report, we find no basis for a conclusion that Mychaskiw's training or experience qualify him to offer an expert opinion on the standard of care for the use of anesthesia during a surgical procedure. That being the case, the report is not an expert report within the requirements of Section 13.01. *In re Windisch,* 138 S.W.3d at 514; *Chisholm,* 63 S.W.3d at 907; *see Palacios,* 46 S.W.3d at 879; *In re Morris,* 93 S.W.3d at 390–91; *Whitworth v. Blumenthal,* 59 S.W.3d 393, 398–99 (Tex.App.-Dallas 2001, pet. dism'd by agr.) (en banc).

■ We agree with *Palacios* that an expert report by which the expert simply states that he or she knows the standard of care and concludes it was not met is not sufficient to meet the requirements of Section 13.01. *See Palacios,* 46 S.W.3d

at 880. It likewise cannot be sufficient for one rendering a Section 13.01 report simply to state in conclusory fashion that he is qualified by training or experience to testify as to a particular matter. *In re Windisch*, 138 S.W.3d at 512–14; *cf. Coastal Transport Co., Inc. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227 (Tex.2004); *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). We note that the Mychaskiw report does not even contain such a statement. The report appears to be a summary of the facts leading up to the incident with a critique of the incident but contains no basis for the opinions provided.

In many of the cases which we have reviewed for guidance, *e.g., Forrest*, 77 S.W.3d at 844; *Tomasi*, 63 S.W.3d at 63, appellate courts were reviewing decisions of trial courts to dismiss cases. The case before us, however, involves a claim that the trial court has abused its discretion in failing to dismiss the case as a sanction for noncompliance with the statutory requirements. We consider the requirement that the Section 13.01 report and *curriculum vitae* set forth the expert's familiarity with the particular procedure at issue to be sufficiently well established, though, to require its application here. Accordingly, we conclude that under the standards set forth by the Supreme Court in *Palacios*, the trial court misapplied Section 13.01(*l*) to the report submitted by the plaintiff in this case, and so abused its discretion. *In re Windisch*, 138 S.W.3d at 512–14; *see Walker*, 827 S.W.2d at 840. Having found that the report as provided does not comply with the statutory requirements, it is, therefore, not a good faith effort to comply. Accordingly, we sustain Relator's Issues One through Four.

## V. INADEQUATE REMEDY AT LAW

In Issue Five, Samonte contends that he has no adequate remedy at law because a post-trial appeal cannot remedy the deprivation of a statutory due process right to pretrial dismissal with prejudice. We agree with Samonte's position and have addressed this issue previously in *In re Tenet Hospitals Ltd.*, 116 S.W.3d 821, 823–27 (Tex.App.-El Paso 2003, orig. proceeding). Relator also directs us to *In re Collom & Carney Clinic Ass'n*, 62 S.W.3d 924 (Tex.App.-Texarkana 2001, orig. proceeding). There the court found mandamus proper because the Act requires dismissal where a proper expert report is not timely filed. We agree, as has our sister court in Amarillo. *See In re Rodriguez*, 99 S.W.3d 825, 828 (Tex.App.-Amarillo 2003, orig. proceeding); *In re Morris*, 93 S.W.3d 388, 390 (Tex.App.-Amarillo 2002, orig. proceeding). Where a report totally omits one of the three required elements, the trial court has a ministerial duty to dismiss the lawsuit with prejudice and has no discretion to do otherwise. *In re Tenet Hospitals Ltd.*, 116 S.W.3d at 823–27. We sustain Issue Five.

Because we have found that the expert report as filed does not comply with the requirements of the Act and finding also that Relator has no adequate remedy by appeal, we will conditionally grant the petition for writ of mandamus. We are confident the trial court will grant the relief to which Relator is entitled under Section 13.01(e) and this opinion. We will direct the Clerk to issue the writ only in the event the trial court does not do so.