In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00034-CV

                                                ______________________________

 

 

                            STEPHEN P. SOMERVILLE,
M.D., Appellant

 

                                                                V.

 

                                        DOVIE LAWRENCE, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 71st Judicial District Court

                                                           Harrison County, Texas

                                                           Trial
Court No. 09-0741

 

                                                      
                                            

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM  OPINION

 

            Dovie
Lawrence sued doctors Scott K. Kornman, M.D., and Stephen P. Somerville, M.D.,
for medical malpractice resulting in alleged unnecessary surgery.[1]  Lawrence developed a sore on her mouth
beneath the tongue and sought the advice of her physician.  Suspecting the possibility of a cancerous
growth, Mark Littlejohn, M.D., conducted a biopsy.  Lawrence alleged that Kornman examined the
biopsied specimen and Somerville “signed the surgical pathology report
indicating a diagnosis of ‘Grade 3 squamous cell cell [sic] carcinoma.’”  Lawrence then sought “care and treatment from
an oncologist, and she underwent further testing, including a PET scan.”  After this additional treatment and testing, “a
large section of [Lawrence’s] tongue and the lymph nodes in her neck” were
removed.  Post surgery, Somerville
amended the biopsy report to state “review of primary cuts does show some
squamous atypia but pan cytokeratin does not confirm squamous carcinoma.”  Pathologist Barry M. Shmookler, M.D.,
confirmed the specimens removed from Lawrence during surgery were
cancer-free.  

            Lawrence
claimed that Somerville failed to institute the proper procedures to prevent
misdiagnosis and improperly diagnosed her as having cancer.  The alleged misdiagnosis resulted in, among
other claims, unnecessary surgery, pain when eating, disfigurement, and a permanent
speech impediment.  

            Shmookler
provided an expert report on Lawrence’s behalf. 
Somerville objected to this report and the addendum, claiming that Shmookler
was unqualified, that his report failed to address the standard of care
applicable to him, did not demonstrate how the standard of care was breached,
and did not adequately address causation. 
A motion to dismiss for lack of a qualifying expert report under Chapter
74 of the Texas Civil Practice and Remedies Code was denied by the trial court.
 As his sole point of error on appeal,
Somerville complains that the trial court erred in denying his motion to
dismiss.  

I.          Statement of Jurisdiction 

            Section 51.014(a)(9) of the Texas Civil Practice and
Remedies Code specifically permits the appeal of an interlocutory order from a
district court that “denies all or part of the relief sought by a motion”
seeking to dismiss a plaintiff’s claim for failure to meet the expert report
requirements.  Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon
2008); Lewis v. Funderburk, 253
S.W.3d 204, 208 (Tex. 2008); Longino v. Crosswhite, 183 S.W.3d 913, 915 (Tex.
App.—Texarkana 2006, no pet.).  Thus, we
have appellate jurisdiction to consider the trial court’s interlocutory order
denying Somerville’s motion to
dismiss.  Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9); Lewis, 253 S.W.3d at 208; Longino, 183 S.W.3d at 915.

II.        Standard of Review

            A trial court’s decision to
deny a motion to dismiss based on Section 74.351 is reviewed for an abuse of
discretion.[2]  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex.
2001); Longino, 183
S.W.3d at 916.  In order to reverse the
trial court’s decision on this matter, we must find that the judge acted
arbitrarily or unreasonably without reference to guiding rules or
principles.  Longino, 183 S.W.3d at 916.  In reviewing this matter, we may not
substitute our opinion for the trial court’s judgment.  Wright, 79 S.W.3d at 52. 


III.       Qualifications and
Causation 

            Section 74.351(a) states that a “claimant
shall, not later than the 120th day after the date the original petition was
filed, serve on each party or the party’s attorney one or more expert reports,
with a curriculum vitae of each expert.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009).  It is undisputed that the expert report was
served on the parties within the time period required by statute.  Section 74.351(r)(6) requires the report
provide 

a fair
summary of the expert’s opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.  

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2009).  The Texas Legislature intended for health care liability claims to be
scrutinized by an expert before their submission to a fact-finder.  Murphy v. Russell, 167 S.W.3d 835, 838
(Tex. 2005).  

            Before a document can be
considered as an expert report, it must be rendered by a person qualified to
testify as an expert on a particular matter. 
Chisholm v. Maron, 63
S.W.3d 903, 907 (Tex. App.—Amarillo 2001, no pet.).  It is Lawrence’s burden to demonstrate
Shmookler had the requisite knowledge, skill, and experience that would qualify
him as an expert witness in this case.  Broders
v. Heise, 924 S.W.2d
148, 149 & 151 (Tex. 1996). 

            Section
74.401 of the Texas Civil Practice and Remedies Code lists the requirements of
a qualifying expert witness in a suit against a physician.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.401 (Vernon 2005).  Shmookler will qualify if he is a physician
who:  (1) is practicing medicine or was
practicing medicine when the claim arose; (2) has knowledge of the accepted
standards of care; and (3) is qualified on the basis of training or experience
to offer an expert opinion regarding accepted standards of medical care.  Id. 
In determining whether Shmookler’s experience qualifies him to offer an
opinion on the standard of care, we look at whether he is board certified or
has other substantial training or experience in the area of practice, and
whether he is actively practicing medicine in rendering care relevant to
Lawrence’s claims.  Id. 

            We have no doubt that
Shmookler’s curriculum vitae demonstrates that he is a currently practicing
board certified pathologist with extensive training and experience in the
field.  Indeed, experience in the
pathology field is unchallenged.  Instead,
Somerville argues that while Shmookler’s report and curriculum vitae establish
his knowledge of surgical pathology, “they do not provide a basis to conclude
he is qualified to render an opinion on the necessity of surgery.”  In other words, the argument is that while
Shmookler is qualified to render an opinion on a pathologist’s standard of care
and breach, he is unqualified to render an opinion that surgery was
unnecessary, a requirement in establishing a causal connection. 

            The qualifications of an
expert on the issue of causation are separately set forth in Section
74.403.  Tex. Civ. Prac. & Rem. Code Ann. § 74.403 (Vernon
2005).  Shmookler will qualify to render
a causation opinion if he is a physician and “is otherwise qualified to render
opinions on that causal relationship under the Texas Rules of Evidence.”  Id.  Rule 702 of the Texas Rules of Evidence
provides that if the scientific knowledge “will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify
thereto.”  Tex. R. Evid. 702.  “[A]n
expert’s opinion regarding causation that is based completely upon speculation
and surmise amounts to no evidence.”  LMC Complete Auto., Inc. v. Burke, 229 S.W.3d
469, 478 (Tex. App.––Houston [1st Dist.] 2007, pet. denied). 

            Somerville cites Murphy v. Mendoza, 234 S.W.3d 23 (Tex.
App.––El Paso 2007, no pet.).  Rick
Mendoza filed suit against pathologists Alicia G. Murphy and Mariano Allen
alleging they misread pathology specimens of biopsied bladder tissue as
cancerous.  Id. at 25.  In that case,
there was no dispute that Mendoza had cancer; the issue was the extent of the
invasion.  Id.  Mendoza’s bladder and
prostate were surgically removed. 
Mendoza provided an expert report from pathologist Jonathan Epstein.  Id.  Murphy challenged Epstein, alleging that as a
pathologist, Epstein could not render a surgical opinion.  Id. at
29.  In that case, the expert did not
have the original slides to examine, but examined recuts.  Based on the recut slides, Epstein opined
that Murphy’s pathology report was ambiguous when it stated that the cancer
invaded “smooth muscle” without differentiating between muscularis propria
(which would require surgery) and muscularis mucosae (which did not require
surgery).  Epstein further stated that “a
clinician reading this report would most likely interpret the report to
indicate tumor invading the muscularis propria” (surgery necessary) when in fact
it did not.  Id. at 27.  There, it appears
Epstein’s report was attempting to offer an opinion about what a clinician or
surgeon would conclude as to the necessity for surgery by reading this
ambiguous report.  The El Paso court
found he did not display the qualification or expertise to render such an opinion
of a surgeon.  

            Both Drs. Shmookler and
Somerville are pathologists.  Shmookler’s
expertise as a pathologist has not been challenged.  His report explains that a basic principle of
medicine is that an “extensive, cancer-type surgical procedure is not indicated
for a benign, reactive non-neoplastic lesion.”  Unlike Murphy, where the issue was the extent
of cancer and its evaluation to determine the necessity for surgery, here, it
is undisputed that the biopsy reading was wrong––the report stated Lawrence had
cancer when she did not.  In this
instance, where an organ is entirely free of cancerous cells, we believe that a
qualified pathologist, such as Shmookler, may render an opinion on this basic
principle of medicine that a “cancer-type surgical procedure” performed on
Lawrence was unnecessary when no cancer was present.  Therefore, it follows that Lawrence would not
have undergone this surgery if the correct “benign pathology diagnosis had been
rendered.”   

IV.       Standard of Care and
Breach 

            A trial court must grant a motion to dismiss under Section 74.351
if it appears that the report does not represent a good-faith effort to comply
with subsection (r)(6) or is not sufficiently specific enough “to provide a
basis for the trial court to conclude that the claims have merit.”  Palacios,
46 S.W.3d at 875; see Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(6).  In addition to causation
by a qualified expert, a good-faith effort requires
that the report discuss the standard of care and breach of that standard with
sufficient specificity to inform each defendant of the conduct the plaintiff
has called into question and to provide a basis for the trial court to conclude
that the claims have merit.  Jernigan v. Langley, 195 S.W.3d 91, 94
(Tex. 2006) (“[E]ven if we assume that the reports address the standard of care
with respect to each doctor, . . . neither report addresses how Dr. Jernigan
breached the standard or how his unstated breach of duty caused John’s death
with sufficient specificity for the trial court, and Jernigan, to determine
that the allegations against Jernigan had any merit.”); Hernandez v. Ebrom, No. 13-06-053-CV, 2010 WL 1804971, at *4 (Tex.
App.––Corpus Christi May 6, 2010, no pet.) (mem. op.) (report is deficient when
“[i]t does not state who performed the surgery . . . the report never mentions
either defendant in the body of the report”); see also Longino, 183 S.W.3d at 916; Wright,
79 S.W.3d at 52; Palacios,
46 S.W.3d at 875.  The report
can be informal and is not required to prove Somerville’s liability, but must
provide notice of what conduct forms the basis of Lawrence’s complaints and
provide a basis for the trial court to conclude that the claims have
merit.  Longino, 183 S.W.3d at 917.  A report that merely states an expert’s
conclusions about the standard of care, breach, and causation does not meet the
statutory requirements.  Id.;
Wright, 79 S.W.3d at 52.  Rather, the
expert must explain the basis of his or her statements to link the expert’s conclusions
to the facts.  Wright, 79 S.W.3d at 52.  The report itself must contain the required
information within its four corners.  Id. at 53.  The trial court’s decision regarding adequacy
of an expert report is reviewed under an abuse of discretion standard.  Longino, 183 S.W.3d at 916.

            An
expert report must inform each defendant of the specific conduct of each
defendant that the plaintiff has called into question.  Palacios,
46 S.W.3d at 879; Murphy, 234 S.W.3d
at 29–30 (citing Garcia v. Marichalar,
198 S.W.3d 250, 254–55 (Tex. App.––San Antonio 2006, no pet.)) (although expert
report focused on single incident, it did not inform defendant of his specific
conduct called into question because multiple defendants were sued and report
failed to discuss how defendant’s care failed to meet standard of care or how
defendant’s care caused harm).  In this
case, Shmookler’s expert report failed to reference Somerville by name.  Instead, it referred to the “examining
pathologist.”  An addendum to the expert
report stated:

In a phone conversation with Dr. Mark Littlejohn
on September 10, 2009, he stated that he was aware of speculation that the
microscopic slides from the tongue biopsy . . . performed on Dovie Lawrence
were reviewed by Dr. Scott Kornman.  This
raises the possibility that the microscopic slides were really reviewed and
diagnosed by Dr. Kornman.  

 

Thus, even though the report was signed by Dr.
Stephen Somerville, if Dr. Kornman had reviewed and diagnosed these
slides, he breached the standard of care. 
Alternatively, if it was Dr. Somerville who reviewed and diagnosed these
slides, then he breached the standard of care. 
Therefore, in order to determine who breached the standard of care, it
is necessary to resolve this issue. 

 

In other words, Shmookler could
not determine which doctor breached the standard of care.  A report is sufficient only if it provides “specific
information about what the defendant should have done differently.”  Longino,
183 S.W.3d at 917.  In this case, the
report provided no information other than what the examining pathologist should
have done differently.[3]  The report itself must contain the required
information within its four corners.  Wright, 795 S.W.3d at 53.  It did not identify
Somerville as the examining pathologist.  As in Jernigan,
Shmookler’s report, assuming it correctly identified the standard of care for
the examining pathologist, could not be used to determine whether Lawrence’s
claims against Somerville had any merit. 
For this reason, we sustain Somerville’s point of error on standard of
care and breach.[4]


            Somerville contends that Lawrence’s
claims must be dismissed.  Section
74.351(c) states, “[i]f an expert report has not been served within the period
specified by Subsection (a) because elements of the report are found deficient,
the court may grant one 30-day extension to the claimant in order to cure the
deficiency.”  Tex. Civ. Prac. &
Rem. Code Ann. §
74.351(c) (Vernon Supp. 2009).  Because a
report, although deficient, was timely filed, the trial court can grant an
extension of time under Section 74.351(c).  See Longino, 183 S.W.3d at 918 n.2 (citing In re Woman’s Hosp. of Tex., Inc., 141
S.W.3d 144, 156 (Tex. 2004)).

V.        Conclusion 

            We
reverse the judgment and remand this case to the trial court to determine
whether to grant a thirty-day extension so that Lawrence might attempt to cure the
deficiencies in the report.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(c); Leland v. Brandal, 257
S.W.3d 204, 205 (Tex. 2008).

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          July 19, 2010

Date Decided:             August 12, 2010











[1]Dr.
Kornman was later nonsuited. 

 





[2]Some
of the cases cited refer to Article 4590i, Section 13.01 of the Texas Revised
Civil Statutes, which was later codified at Tex.
Civ. Prac. & Rem. Code § 74.351.





[3]Lawrence’s
own petition, as well as her biopsy report, identified Kornman as the
pathologist who “examined the biopsied specimen in gross.”  If this is the case, Lawrence’s response to
the motion to dismiss states “ultimately it may have been Kornman who was
responsible for the misdiagnosis of cancer at issue in this case. . . .  At this juncture, it is literally impossible
to determine which of the two defendants is the culprit.”   

 





[4]We
note that the record of the hearing contains counsel’s statements suggesting
that Somerville conducted the microscopic examination of the biopsy
specimen.  The report contained
information identifying the standard of care and breach for the examining
pathologist.  However, because the four
corners of the expert report did not identify Somerville as conducting the
microscopic examination, we may not rely on counsel’s statements in determining
the sufficiency of the report.  Palacios, 46 S.W.3d at 878.