# IN THE SUPREME COURT OF TEXAS

No. 16-0966

THOMAS A. LALONDE, JR., P.E., INDIVIDUALLY AND D/B/A LEE ENGINEERING CO., LEE ENGINEERING CO., STANLEY HAROLD PRATHER AND PRATHER ENGINEERING CONSULTANTS, INC., PETITIONERS,

v.

PAUL GOSNELL AND KIM GOSNELL, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

JUSTICE BOYD, joined by CHIEF JUSTICE HECHT and JUSTICE BLACKLOCK, dissenting.

The issue in this case is whether the engineers waived their chapter 150 dismissal right, not whether they are estopped from asserting it. The Court finds waiver, but only by misconstruing the right at issue. At best, the facts might possibly support estoppel, but they cannot support waiver of the right chapter 150 actually grants. I respectfully dissent.

## I.
## Estoppel and Waiver

Estoppel and waiver "are frequently referenced together, but they are different." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Estoppel "prevents litigants from taking contradictory positions as a means of gaining an unfair advantage from the inconsistency." *Kramer v. Kastleman*, 508 S.W.3d 211, 217 (Tex. 2017). It "generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit." *Ulico*, 262

1

S.W.3d at 778.[1] When applicable, estoppel will prevent a party from asserting a right regardless of whether the party intended to waive that right. *See Sw. Inv. Co. v. Alvarez*, 442 S.W.2d 862, 866 (Tex. App.—El Paso 1969) ("It is elementary that estoppel binds the parties regardless of their intention if the other party would be injustly prejudiced."), *reformed on other grounds and aff'd*, 453 S.W.2d 138 (Tex. 1970).[2]

Waiver, by contrast, is "largely a matter of intent." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). It occurs only when a party who knows about a right intentionally relinquishes it. *Crosstex Energy Servs. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014). To waive a right, a party must clearly communicate its intent to relinquish or abandon the right. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015). Waiver does not depend on the opposing party. It is "'essentially unilateral' in character and 'results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it.'" *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017) (quoting *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967)).

A party may communicate its intent to waive a right either expressly or impliedly. *G.T. Leach*, 458 S.W.3d at 511–12. To impliedly waive a right, the party must engage in conduct that

---

[1] *See also Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008) ("Estoppel is a defensive theory barring parties from asserting a claim or defense when their representations have induced 'action or forbearance of a definite and substantial character' and 'injustice can be avoided only by enforcement.'") (quoting *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken [and] applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.").

[2] *See also* 31 C.J.S. *Estoppel and Waiver* § 91 ("[E]stoppel may arise even though there was no intention on the part of the party estopped to relinquish any existing right."); 28 AM. JUR. 2D *Estoppel and Waiver* § 35 ("[A]n equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish or change any existing right.").

is "unequivocally inconsistent with," *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005), or "in contravention of" the right, *G.T. Leach*, 458 S.W.3d at 514, so as to "clearly demonstrat[e]" the party's intent to relinquish it, *Crosstex*, 430 S.W.3d at 394 (quoting *Jernigan*, 111 S.W.3d at 156). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Jernigan*, 111 S.W.3d at 156.

Although the homeowners claimed they would be "penalized" if the trial court dismissed their claims, they have never argued that the engineers should be estopped from claiming their right to dismissal. Instead, they argue only that the engineers impliedly waived their chapter 150 dismissal right by engaging in this litigation. A party can impliedly waive a right through its litigation conduct, but regardless of whether the right is contractual[3] or statutory,[4] the litigation conduct must be so inconsistent with the right as to clearly demonstrate the party's intent to abandon it. *Crosstex*, 430 S.W.3d at 394.

In various contexts, we have identified a wide variety of factors that may indicate that a party "substantially invoked the judicial process" so as to impliedly waive a particular right. *See G.T. Leach*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 589–90. But our purpose in

---

[3] *See RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 434 (Tex. 2016) (per curiam) (concluding litigation conduct did not "establish RSL intended to waive its right to arbitrate" or "indicate intent to waive its right to arbitrate"); *G.T. Leach*, 458 S.W.3d at 514 (holding party did not act "in contravention of its contractual right to arbitration"); *In re Citigroup Glob. Markets, Inc.*, 258 S.W.3d 623, 626 (Tex. 2008) (per curiam) (orig. proceeding) (holding party's litigation conduct did not "indicate it had abandoned arbitration"); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (per curiam) (orig. proceeding) (holding party's litigation conduct "did not evince an intent to waive its arbitration right"); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999) (per curiam) (orig. proceeding) ("Waiver may be found when it is shown that a party acted inconsistently with its right to arbitrate . . . ."), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding).

[4] *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014) ("[T]here can be no waiver unless so intended by one party and so understood by the other.") (addressing statutory offset right); *Crosstex*, 430 S.W.3d at 393–94 (considering "surrounding facts and circumstances" to find implied "intent" to waive "through conduct") (statutory dismissal right); *Jernigan*, 111 S.W.3d at 156 ("[F]or implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances.") (statutory dismissal right).

3

considering those factors has always been to determine not *merely* whether the party "substantially invoked the judicial process," but whether the party's conduct clearly demonstrated the party's intent to waive the right at issue. *G.T. Leach*, 458 S.W.3d at 515 (concluding evidence did not establish that party "substantially invoked the judicial process *to the extent required to demonstrate a waiver* of its right to arbitration") (emphasis added). The "substantially invoked" phrase, as we have used it, reflects the fundamental principle that "[i]mplying waiver from a party's actions is appropriate only if the facts demonstrate that the party . . . intended to waive its . . . right." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (per curiam).

In other words, we do not *impute* an intent to waive a contractual arbitration right *because* the party "substantially invoked the judicial process;" rather, we *conclude* that a party substantially invoked the judicial process, and thus impliedly waived the right, *because* its litigation conduct demonstrated an intent to waive the right. *Crosstex*, 430 S.W.3d at 393–94 (holding no waiver because party's litigation conduct "d[id] not demonstrate intent to waive its right to seek dismissal" under chapter 150); *Jernigan*, 111 S.W.3d at 156–58 (holding no waiver because party's "actions were not so inconsistent with an intent to assert the right to dismissal under [the medical-liability act] as to amount to a waiver of that right").[5] Stated differently, we use the "substantially invoked" phrase as a shorthand label to describe litigation conduct that is so inconsistent with the right at issue that it clearly demonstrates an intentional relinquishment of that right. *G.T. Leach*, 458 S.W.3d at 515 (holding evidence did not establish that party "substantially invoked the judicial process *to the extent required to demonstrate a waiver* of its right to arbitration") (emphasis

---

[5] *See also, e.g.*, *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 715–16 (Tex. 2016) (orig. proceeding) (holding party had not "substantially invoked the judicial process" because its litigation conduct did not "evidence an intent to waive the forum-selection clause but rather the opposite"); *In re ADM Inv'r Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding) (holding party did not invoke the judicial process "so as to waive enforcement" of contractual forum-selection clause because it "did nothing 'unequivocal' to waive enforcement").

added); *EZ Pawn*, 934 S.W.2d at 89 ("Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce [a right] intended to waive its . . . right.").[6]

In making that determination, we consider all of the facts and circumstances—the "totality of the circumstances"—in each particular case, whether the right at issue is a contractual arbitration right,[7] a contractual forum-selection right,[8] or a statutory right.[9] But even when an alleged waiver is based on litigation conduct, we "will not infer waiver where neither explicit language nor conduct indicates that such was the party's intent." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 410–11 (Tex. 2011) (orig. proceeding).[10]

---

[6] *See RSL Funding*, 499 S.W.3d at 433–34 (holding party did not invoke the judicial process "sufficiently to waive its contractual arbitration rights" because its litigation conduct "did not indicate intent to waive its rights to arbitrate disputes that might arise . . . in the future"); *Citigroup*, 258 S.W.3d at 626 (holding party's litigation conduct was not "necessarily inconsistent with seeking arbitration" and did not "indicate it had abandoned arbitration"); *Nexion Health*, 173 S.W.3d at 69 (finding no waiver because party's litigation conduct "did not evince an intent to waive its arbitration right"); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding) (holding party's litigation conduct "reflects an intent to avoid the state judicial process, not invoke it"); *Perry Homes*, 258 S.W.3d at 593 (explaining that an agreement to waive arbitration "can be implied from a party's conduct, although that conduct must be unequivocal").

[7] *RSL Funding*, 499 S.W.3d at 430 ("Whether waiver has occurred depends on the totality of the circumstances."); *G.T. Leach*, 458 S.W.3d at 512 ("Whether a party has substantially invoked the judicial process depends on the totality of the circumstances."); *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam) ("We decide waiver on a case-by-case basis by assessing the totality of the circumstances."); *Citigroup*, 258 S.W.3d at 625 ("Waiver is a legal question for the court based on the totality of the circumstances . . . ."); *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (per curiam) (orig. proceeding) (same); *Perry Homes*, 258 S.W.3d at 591 ("We agree waiver must be decided on a case-by-case basis, and that courts should look to the totality of the circumstances.").

[8] *Nationwide*, 494 S.W.3d at 713 ("Whether litigation conduct is 'substantial' depends on context and is determined on a case-by-case basis from the totality of the circumstances."); *ADM*, 304 S.W.3d at 374 (describing "test considering the totality of the circumstances").

[9] *Moayedi*, 438 S.W.3d at 6 ("Determining whether there has been an 'intelligent waiver' depends on the circumstances of the case."); *Crosstex*, 430 S.W.3d at 393 ("To find waiver through conduct, such intent 'must be clearly demonstrated by the surrounding facts and circumstances.'") (quoting *Jernigan*, 111 S.W.3d at 156).

[10] The federal-court decisions on which we have relied also confirm this short-hand use of the "substantially invoked" phrase. *See Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999) (holding that, to "substantially invoke[] the judicial process," the party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration"); *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (holding that implied waiver of a contractual arbitration right occurs only when the party "substantially participates in litigation *to a point* inconsistent with an intent to arbitrate") (emphasis added); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (holding that settlement attempts "do not preclude the exercise of a right to arbitrate" because they "are not

5

## II.
## The Chapter 150 Dismissal Right

To correctly determine whether a party has impliedly waived a right through litigation conduct, we must consider the specific right at issue. Here, the homeowners contend that the engineers impliedly waived their right to mandatory dismissal under chapter 150 of the Texas Civil Practice & Remedies Code. Chapter 150 requires a plaintiff who sues in Texas for damages arising out of services provided by certain licensed professionals to file a "certificate of merit." TEX. CIV. PRAC. & REM. CODE §§ 150.001(1-a), .002. If the plaintiff fails to file the required certificate "with the complaint," the court "shall" dismiss the claims, and that dismissal "may be with prejudice." *Id.* § 150.002(a), (e).

Crucially, chapter 150 does not impose any deadline by which the defendant must assert its right to mandatory dismissal. It does not require the defendant to file a dismissal motion before filing an answer, before attempting to settle the claim, before participating in discovery, before designating third parties, or before engaging in any other litigation conduct. Under the statute, the defendant has the right to seek and obtain dismissal at any point in the litigation process. Because the statute "does not include a deadline, a defendant does not waive the right to move for dismissal simply by waiting to file the motion." *Jernigan*, 111 S.W.3d at 157 (citing *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 227 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Hernandez v. Piziak*, No. 03-02-00544-CV, 2003 WL 248329, at *8–10 (Tex. App.—Austin Feb.6, 2003, pet. denied) (mem. op.); *Kidd v. Brenham State Sch.*, 93 S.W.3d 204, 208 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Chisholm v. Maron*, 63 S.W.3d 903, 908 (Tex. App.—

---

inconsistent with an inclination to arbitrate"); *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971) (explaining that implied waiver occurs only when the parties' litigation conduct is "inconsistent with the notion that they treated the arbitration provision in effect" or "might be reasonably construed as showing that they did not intend to avail themselves of the arbitration provision").

Amarillo 2001, no pet.)); *cf. John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex. 2001) (per curiam) (holding that when a rule of civil procedure "imposes no deadline, . . . none can be added by decision").

The Court correctly acknowledges that the engineers' litigation conduct "must necessarily be weighed differently here" than in cases involving a contractual right to arbitration or to litigate in a particular forum, because those rights are "materially different" than the chapter 150 dismissal right. *Ante* at ___. But it finds waiver only by misconstruing the right and relying on cases involving the "materially different" right to arbitration. Instead of identifying the right at issue— the right to dismissal for failure to file a certificate of merit, unlimited by any statutory deadline— the Court confuses the potential *benefits* of the defendant's dismissal right with the *nature* of the right as chapter 150 describes it. The Court notes, for example, that the dismissal right "helps ensure frivolous claims are expeditiously discharged," *ante* at ___, "obviates the need to litigate the lawsuit altogether," *ante* at ___, allows the defendant to "avoid litigation entirely," *ante* at ___, enables the trial courts to "quickly jettison meritless lawsuits," *ante* at ___ , "saves parties the expense of protracted litigation," *ante* at ___, "provides ample opportunity to [obtain dismissal] without the need to engage in any other litigation activity," *ante* at ___, and "eliminate[s] the obligation to litigate at all," *ante* at ___. In light of these observations, the Court concludes that "*all* of the Engineers' conduct in this case was inconsistent with" their dismissal right. *Ante* at ___.

But the right the statute actually grants—to seek and obtain dismissal at any time—is far broader than the right the Court describes. To be sure, the statue *permits* the defendant to obtain all the benefits of early—even immediate—dismissal, but nothing in the statute *requires* the defendant to take advantage of those benefits or promptly file a dismissal motion. As we confirmed when discussing the medical-liability act's deadline-free dismissal right in *Jernigan*, the statute

7

makes it apparent that defendants "may wait for years, although they forfeit some of the cost-reduction protections of the statute by doing so." *Jernigan*, 111 S.W.3d at 157 (quoting *Kidd v. Brenham State Sch.*, 93 S.W.3d 204, 208 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)); *see also Apodaca v. Miller*, 281 S.W.3d 123, 127 (Tex. App.—El Paso 2008, no pet.) ("While a three-year delay in filing a motion to dismiss may result in the defendant's forfeiture of the cost-reducing benefits of the statute, it is not a 'clear demonstration' of an intent to waive the statutory right to dismissal.") (citing *Jernigan*, 111 S.W.3d at 157; *Kidd*, 93 S.W.3d at 208). The issue is not (as the Court suggests) whether the engineers waived their right to obtain dismissal *early* in the process, but whether they waived their right to ever obtain dismissal at any point in the process.

**A. Waiver of the right**

We have addressed implied waiver of statutory dismissal rights on only two occasions, and we found no waiver in either case. First, in *Jernigan*, we held that the defendant had not impliedly waived the right to dismissal due to the plaintiff's failure to timely file adequate expert reports under the medical-liability act, specifically noting that courts have held that "because the statute does not include a deadline, a defendant does not waive the right to move for dismissal simply by waiting to file the motion." *Jernigan*, 111 S.W.3d at 157 (citations omitted). The plaintiff argued the defendant impliedly waived the right by failing to object to the reports until more than 600 days after they were filed, participating in discovery during that time, seeking summary judgment on different grounds, and amending his answer to delete any complaint that the plaintiff had failed to meet statutory prerequisites to suit. *Id.* at 155. Holding that the defendant had not impliedly waived the right because his "silence or inaction" was not "inconsistent with the intent to rely upon the right to dismissal," we suggested that implied waiver could occur only if the defendant had failed to object "until after the case is disposed of on other grounds." *Id.* at 157.

8

More recently, we held in *Crosstex* that the defendant had not impliedly waived the chapter 150 dismissal right at issue here even though it had participated in discovery, filed an answer, joined in agreed continuance and docket-control orders, and entered into a rule 11 agreement, and then filed a dismissal motion three days later, after limitations had run. 430 S.W.3d at 394. We rejected the waiver argument because none of this conduct "clearly demonstrated" an "*intent* to waive the right to dismiss." *Id.* at 394–95 (emphasis added).

As the Court notes, the engineers engaged longer and more extensively in this litigation than the defendants in *Jernigan* or *Crosstex*. The engineers agreed to a scheduling order setting a trial date and imposing deadlines for discovery, expert designations, and amended pleadings; substituted their counsel; filed amended answers; engaged in written discovery; designated experts and responsible third parties; agreed to a continuance; supplemented discovery responses; amended their pleadings; and participated in both voluntary and court-ordered mediation. But none of this conduct was inconsistent with their chapter 150 right to seek dismissal *at any time*, or otherwise clearly demonstrated that they knew about and intended to relinquish or abandon that right.

As we said in *Jernigan*, in the absence of a deadline, a party does not waive its deadline-free dismissal right simply by waiting to assert that right. 111 S.W.3d at 157. But we suggested that a party could waive the right by asserting it only after the case is "disposed of on other grounds." *Id.* The Court suggests that a party could waive its dismissal right by "[s]eeking and obtaining affirmative relief from the trial court, especially summary judgment," *ante* at ___, or by "electing to litigate the case to a merits-based disposition," *ante* at ___. I agree with the Court that asking the trial court to enter judgment on the merits based on a ground other than the plaintiff's failure to file the certificate of merit is "inconsistent with the right to dismissal of the case without

9

litigation." *Ante* at ___. And at least under some circumstances, announcing "ready" for trial could clearly demonstrate a defendant's intent to forego dismissal. *See Apodoca*, 281 S.W.3d at 127; *see also Uduma v. Wagner*, No. 01-12-00796-CV, 2014 WL 4259886, at *7 (Tex. App.—Houston [1st Dist.], Aug. 27, 2014, pet. denied) (mem. op.) (finding waiver when defendant sought dismissal "only *after* the first full trial on the merits *concluded*"); *Mem'l Hermann Hosp. Sys. v. Hayden*, No. 01-13-00154-CV, 2014 WL 2767128, at *10 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. denied) (mem. op.) (finding waiver when defendant twice announced ready for trial and thus "attempted to obtain a final judgment through other means"); *but see Alexander v. Colonnades Health Care Ctr. Ltd.*, No. 14-16-00500-CV, 2017 WL 4930885, at *10 (Tex. App.—Houston [14th Dist.] Oct. 31, 2017, no pet.) (mem. op.) ("[T]rial settings do not equate to an announcement of ready.").

But as the Court acknowledges, the engineers never filed any summary-judgment motions, never asked the trial court for affirmative relief on the merits, and never expressed that they were ready and willing to proceed with a trial. *Ante* at ___. The Court notes that the engineers pleaded for attorneys' fees (in their original answer) and later sought to designate responsible third parties, *ante* at ___, but these pleadings did not ask the court to grant relief, much less merits-based relief. *See G.T. Leach*, 458 S.W.3d at 513 (refusing to consider as evidence of waiver the counterclaim filed because it "was defensive in nature, and our rules required G.T. Leach to file it or risk losing it altogether"); *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.") (quoting *Gen. Land Office v. Oxy U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990)). Pleading for relief is not

10

the same as asking the trial court to enter relief based on those pleadings. *See Crosstex*, 430 S.W.3d at 394 ("We should not penalize parties or their attorneys for acting out of an abundance of caution and protecting their interests by filing an answer.").

We cannot rely on implied waiver to judicially restrict the engineers' statutory right by imposing a deadline or prohibitions the statute does not impose. While the Court might think it best that parties be required to move for dismissal early in the litigation process, and it might think that allowing the defendant to delay filing the motion while engaging in settlement discussions and the litigation process is unfair to plaintiffs, neither public policy nor any sense of fairness can dictate the outcome here. We "must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it." *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013). The issue here is simply whether the engineers intentionally relinquished their statutory right to dismissal. Although that right was waivable, waiver would require not just the lack of intent to seek dismissal at some point in the process, but an intention to never seek dismissal at any point in the process.

In support of its conclusion, the Court suggests that "the more developed a case is, and the closer it is to trial, the stronger the implication becomes that the defendant intended to abandon the certificate-of-merit requirement, and accordingly, the remedy for noncompliance." *Ante* at ___. But the Court necessarily assumes that the only possible reason the engineers could have delayed filing their dismissal motion was an intent to litigate the case to a final judgment. *See ante* at ___ ("[E]very fact in this case . . . demonstrates an intent to litigate contrary to the Engineers' statutory dismissal right."). The only reason the record supports, however, is that the parties were engaged in negotiations, attempting to settle the case without having to go to trial. Indeed, the record suggests that the parties repeatedly pursued settlement and worked cooperatively with each other

11

throughout the case. The engineers did not even answer or appear in the suit until twenty months after it was filed, and the homeowners made no effort to seek a default during that time.[11] After the engineers answered, the parties agreed to a scheduling order and participated in voluntary mediation. They then agreed to continue the first trial setting, and the case again remained mostly inactive for the next ten months. And as the Court itself acknowledges, the parties continued their negotiations for five months even after the engineers filed their dismissal motion. *Ante* at ___.

If the record supports any reasonable inference as to why the engineers delayed seeking dismissal, it is that they wanted to find a way to satisfy their customers, not that they wanted to go to trial. That they did not intend to seek dismissal at any particular point in the process does not "clearly demonstrate" that they intended to waive the right to dismissal completely.

## B. Prejudice and estoppel

Finally, straying from waiver into estoppel, the Court relies on our decision in *Perry Homes* and suggests that—despite the lack of any statutory deadline to seek dismissal—the engineers waived their dismissal right by waiting until "the eve of trial," and after limitations had run, to assert it. *Ante* at ___. But *Perry Homes* involved alleged waiver of a contractual arbitration right, not a statutory dismissal right. 258 S.W.3d at 584. As the Court itself acknowledges, a contractual arbitration right is "materially different" from the chapter 150 dismissal right. *Ante* at ___.

Because the Federal Arbitration Act governed most of the arbitration agreements we have addressed, our objective in those cases was to uphold "the FAA's goal of resolving disputes without the delay and expense of litigation." *In re Vesta Ins. Grp.*, 192 S.W.3d 759, 764 (Tex.

---

[11] The engineers explain that they engaged in settlement negotiations with the homeowners during this delay, attempting to address and resolve their concerns. The homeowners do not dispute that explanation, but the record contains no evidence to confirm it.

12

2006) (per curiam) (orig. proceeding).[12] For this reason, we have applied a "different standard" in our arbitration cases, *Nationwide*, 494 S.W.3d at 712–13, one that includes a prejudice requirement that makes it "quite similar" to the test for estoppel, *Perry Homes*, 258 S.W.3d at 593.[13] As a result, when deciding whether a party impliedly waived an arbitration right through litigation conduct, "the precise question is not so much when waiver occurs as when a party can no longer take it back." *Id.* at 595.[14]

The engineers urge us to adopt a prejudice requirement for implied waiver of the chapter 150 dismissal right. The Court dodges that issue, but then suggests that, even if prejudice is a requirement, "prejudice exists" here. *Ante* at ___. It acknowledges that prejudice is an element of estoppel, not waiver, *see ante* at ___ ("Prejudice, in comparison [to waiver], is an estoppel-based requirement . . . ."), yet it holds that "allowing limitations to expire before asserting a right that significantly pre-existed the time bar provides some indication they intended to waive the pleading defect and the remedy," *ante* at ___. Ultimately, this is the type of estoppel-based waiver we applied in *Perry Homes*, not the intent-based waiver we applied in *Crosstex* and *Jernigan*. In fact,

---

[12] In the federal context, the concept of "waiver" of an arbitration right derives from the FAA's requirement that courts stay litigation involving arbitrable issues pending arbitration unless the party seeking arbitration is "in *default* in proceeding with such arbitration." *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (per curiam) (orig. proceeding) (emphasis added) (quoting 9 U.S.C. § 3). Although the statute refers to "default," the federal courts have construed the term to mean something similar to common-law waiver. *Id.*; *see Morewitz*, 62 F.3d 1356 at 1366 n.16 ("[T]he term 'default' has been construed as analogous in meaning to the common-law term 'waiver.'") (quoting 3 Fed. Proc., L.Ed. *Arbitration* § 4:24 (1981)).

[13] As Justice Johnson explained in his *Perry Homes* dissent, "Waiver as that term is used in regard to arbitration agreements subject to the FAA, however, requires *more* than is required for general waiver—it requires proof that the party asserting waiver as a defense to arbitration has suffered detriment." *Id.* at 603 (Johnson, J., dissenting) (emphasis added).

[14] *See also id.* at 597 (discussing the "inherent unfairness" in allowing a party to "purposefully and unjustifiably . . . manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party") (quoting *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 n.5 (1st Cir. 2005)); *see also Serv. Corp. Int'l*, 85 S.W.3d at 174 ("Courts will not find that a party has waived its right to enforce an arbitration clause by merely taking part in litigation unless it has substantially invoked the judicial process to its opponent's detriment.") (quoting *Bruce Terminix*, 988 S.W.2d at 704).

we specifically held in *Crosstex* that the defendant did not clearly demonstrate an intent to waive the chapter 150 dismissal right by waiting until after limitations had run before filing its dismissal motion. 430 S.W.3d at 393–94. Even if the homeowners showed they were prejudiced by the engineers' delay in seeking dismissal, they cannot establish waiver unless they show that the engineers clearly demonstrated an intent to relinquish their dismissal right.

## III.
## Conclusion

Ultimately, two fundamental truths should determine the outcome of this case. First, chapter 150 gave the engineers the right to obtain dismissal of the homeowners' claims at any time during this litigation process. And second, we cannot hold that the engineers impliedly waived that right through litigation conduct unless that conduct clearly demonstrated that they knew about and intended to relinquish that right. Because the statute did not require them to seek dismissal early in the process or prohibit them from engaging in litigation before seeking dismissal, none of their conduct clearly demonstrated an intent to relinquish their right to obtain dismissal when and as the statute allowed. I would therefore reverse the court of appeals' judgment and reinstate the trial court's judgment dismissing the homeowners' claims. Because the Court does not, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 14, 2019